UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Mehmet Huseyin GULPINAR,** ) <br> **Nur GULPINAR,** ) <br> **Emre GULPINAR,** ) <br> **Can GULPINAR,** ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> v. ) <br> ) <br> **U.S. CITIZENSHIP AND IMMIGRATION** ) <br> **SERVICES ("USCIS"); UR M. JADDOU,** ) <br> Director, USCIS, in her official capacity, ) <br> as well as her successors and assigns; ) <br> **U.S. DEPARTMENT OF HOMELAND** ) <br> **SECURITY ("DHS"); ALEJANDRO** ) <br> **MAYORKAS, Secretary of DHS**, ) <br> in his official capacity, as well as his successors ) <br> and assigns; **ALISSA EMMEL**, Chief, Immigrant ) <br> **Investor Program Office, USCIS**, in her official ) <br> capacity, as well as her successors and assigns; ) <br> ) <br> **Defendants.** ) | Case No. 1:23-cv-01019 |

### COMPLAINT FOR WRIT OF MANDAMUS

Plaintiffs, by and through undersigned counsel, commence this action against the above-named Defendants, and state as follows:

### INTRODUCTION

1. Plaintiff Mehmet Huseyin Gulpinar ("Huseyin") is a foreign national investor who invested $550,000 in CMB Export Infrastructure Investment Group 48, LP ("CMB Group 48") in 2015 that was created under the Employment-Based Fifth Preference Immigrant Investor Program (the "EB-5 program") and filed for conditional Lawful Permanent Resident status in the

1

U.S. via Form I-526 with U.S. Citizenship and Immigration Services ("USCIS") for himself, his spouse Nur Gulpinar, and their two children Emre and Can Gulpinar (together, "Plaintiffs").

2. Plaintiff Huseyn filed a form I-829 to remove the conditions on Plaintiffs' permanent resident status on December 19, 2019.

3. Plaintiffs bring this action to remedy the unlawful, unreasonable, arbitrary, and capricious delay by USCIS and the other named Defendants in adjudicating their form I-829 or failing to complete the adjudication of their form I-829 because it was filed over three years ago.

4. Plaintiffs state that their I-829 petition meets all of the requirements for adjudication.

5. The Immigrant Investor Program Officer's ("IPO") excessive processing time has caused harm to Plaintiffs. Plaintiffs' physical and mental health has suffered, and their education, business, travel, and life plans have been impeded due to Defendants' significant delay which will continue if adjudication is not complete.

6. Plaintiffs respectfully request an order from this Court compelling Defendants to adjudicate their petitions without further delay.

## JURISDICTION

7. Jurisdiction is proper under 28 U.S.C. § 1331 which states that district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

8. Jurisdiction is also proper under 28 U.S.C. § 1361 which states that district courts have "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

9. Review is also warranted and relief sought under the Administrative Procedure Act 5 U.S.C. §701 et seq., § 702, §706(1) and §555(b).

## VENUE

10. Venue is proper pursuant to 28 U.S.C. § 1391 (e) because this is an action against agencies and officers of agencies of the United States in their official capacities, brought in a District in which Plaintiffs reside, and there is no real property involved in this action.

## PARTIES

11. Plaintiff Mehhmet Huseyin Gulpinar, his spouse Nur Gulpinar, and their children Emre and Can Gulpinar are nationals of Turkey and residents of Illinois, U.S. Plaintiffs invested $550,000 in CMB Group 48 and filed form I-526 in 2015.

12. Defendant DHS is the federal agency responsible for administration and enforcement of of immigration laws and statues.

13. Defendant DHS Secretary Alejandro Mayorkas is responsible for just administration and enforcement of the immigration and naturalization laws and is authorized to delegate the administration and enforcement to subordinate employees. He is responsible for the adjudication of applications to amend regional center designations and petitions for alien entrepreneurs.

14. Defendant USCIS is an agency within DHS responsible for the administration of laws and statutes governing immigration and naturalization and the awarding of certain visa petitions consistent with the INA.

15. Defendant Director of USCIS Ur M. Jaddou is responsible for administering immigration and naturalization adjudication functions and establishing immigration policies and priorities including the adjudication of I-829 forms.

16. Defendant USCIS Chief of the IPO Alissa Emmel is responsible for processing applications and petitions under the EB-5 program and specifically petitions for alien entrepreneurs.

**EXHAUSTION OF REMEDIES**

17. Inquiries made to USCIS, congressional inquiries, and inquiries made to the USCIS Ombudsman during USCIS's stated processing time for the petition are not accepted, therefore Plaintiffs were not able to make any inquiries and have no other remedies available to them.

**FACTUAL HISTORY**

**Background on the EB-5 Program**

18. The EB-5 Program was created through the passage of the Immigration Act of 1990 which allowed for immigrant visas per year to foreign nationals seeking Lawful Permanent Resident status based on their capital investments in the United States. See generally the Immigration Act of 1990, Pub. L. No. 101-649, § 121(b)(5), 104 Stat. 4978 (1990) (codified at 8 U.S.C. § 1153(b)(5)).

19. In 1992, Congress expanded the program to include a regional center design which encouraged investors to invest in commercial enterprises within designated, USCIS approved regional centers that managed those enterprises and permitted multiple investors to aggregate investments to finance larger scale projects. *See* Dep't of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, Pub. L. No.102-395 § 610 106 Stat. 1828, 1874 (Oct. 6, 1992). The intent of this was to promote foreign investment and create jobs in the U.S.

20. At the time of Plaintiffs' petition, foreign investors had to meet three statutory requirements under the EB-5 program: (1) invest $1,000,000 in a qualifying New Commercial Enterprise or $500,000 in a Targeted Employment Area, which is a rural area or an area that has experienced unemployment of at least 150% of the national average; (2) that will create a minimum of ten jobs for U.S. workers; (3) by actually placing the investor's capital "at risk" for

the purpose of generating a return. *See* 8 U.S.C. §§ 1153(b)(5)(A)-(C); 8 C.F.R. §§ 204.6(e), 204.6(f)(1)-(3)(2018), 204.6(g)(1). Once the transfer is complete, the foreign investor submits Form I-526 to USCIS. *See* 8 U.S.C. § 1202(a); 8 C.F.R. § 204.6(a).

21. Once the Form I-526 is approved, the foreign investor, along with their spouse and children are granted two-years of conditional permanent resident status. *See generally* 8 U.S.C. § 1182. The foreign investor must then file a Form I-829 which is a Petition to Remove the Conditions on his or her LPR status in the 90-day window prior to the expiration of the two-year conditional period. The conditions will be removed if the foreign investor meets the EB-5 requirements which are that foreign investor invested, maintained the investment, and the investment resulted in the creation of at least ten jobs for U.S. workers. *See generally* 8 U.S.C. § 1186b.

**Plaintiffs' Form I-526 and Form I-829 Under the EB-5 Program**

22. Plaintiff invested $550,000 in CMB Group 48 of which $50,000 is credited toward CMB Group 48's syndication price.

23. CMB Export, LLC was designated by USCIS as a regional center and CMB Group 48 raised $450,000,000 from 900 EB-5 investors to fund a plan known as the Century Plaza development in Los Angeles, California which includes substantial improvements to the Century Plaza hotel, construction of two residential towers, a retail podium, parking garage, and public transit related access and structures at the hotel property.

24. CMB Group 48 lent $450,000,000 to an affiliate of Woodridge Capital Partners, LLC ("Woodridge") who is the owner and developer of the project.

25. Plaintiffs filed their I-526 petition on December 11, 2015, it was approved on March 24, 2017, and Plaintiffs were granted conditional resident status on January 2, 2018.

26. As of June 2018, the project had created more than 4,300 jobs, and at the time Plaintiffs filed their I-829 petition the project was in the process of creating an additional 9,266 jobs for a total of 13,595 new jobs expected, exceeding the ten job requirement under the EB-5 program for each of the 900 CMB Group 48 investors.

27. Throughout the entire period of conditional residence, Plaintiffs have sustained the investment in CB Group 48 by not withdrawing any portion of the $500,000 equity capital investment.

28. Plaintiffs filed their Form I-829 on December 19, 2019 to remove the conditions on their resident status. Specifically, the submission included a completed Form I-829 along with the appropriate filing fee of $3,750, a memorandum, and exhibits to demonstrate eligibility under 8 CFR § 216.6.

**USCIS Has Unreasonably Delayed Adjudicating Plaintiffs' Form I-829**

29. Plaintiffs face harm arising from the uncertainty of their immigration status which are prolonged by the delays in adjudicating their I-829 petitions.

30. Pursuant to 8 U.S.C. §1571(b), "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." However, case processing times increased substantially between September 2022, from 47.8 months to 61.5 months by February 2023.

31. USCIS has a history of reversing its policy positions without notice or warning in the EB-5 program, resulting in petitions that were approvable for years then becoming unapprovable suddenly. The longer the petitions remain pending, the greater the risk that the investors will face unanticipated changes in Defendants' policy administration of the program.

32. In addition, Plaintiffs are eligible to file for naturalization to become U.S. citizens 4 years

6

and 9 months after obtaining conditional permanent residence. They can do this by filing an N-400 form, however, this form can only be approved if the I-829 petition is adjudicated first. The delay in adjudicating the petitions is delaying Plaintiffs' ability to obtain naturalization and citizenship despite their statutory right to do so.

33. In 2016 USCIS (through DHS) issued a Notice of Proposed Rulemaking (NPRM), in which it states that the average number of employee hours it takes to process an I-829 petition is only 5.5 hours.

34. In early 2023, USCIS issued another NPRM which explicitly states that it is committed to decreasing processing time and backlog and has listed proposed fee increases on almost all types of benefits including I-829 petitions.

35. USCIS is primarily a fee-supported, and not appropriations-supported, agency. On information and belief, the Form I-829 has the second most expensive filing fee for a single petition.

36. Defendant USCIS has created barriers to prevent investors from communicating with the agency regarding the status of their petitions because service inquiries are not accepted and responded to unless they are made outside the processing time.

37. On information and belief, the Immigrant Investor Program Office has the authority to hire personnel at rates outside of the normal GS scale in order to attract candidates with the specialized business and economic knowledge and experience that is relevant to EB-5 adjudications.

38. On information and belief, USCIS, through DHS, has the ability to set fees at a level necessary to ensure sufficient resources to hire enough staff to process EB-5 applications and petitions in a timely manner.

7

39. Despite massive EB-5 fee revenues and decreasing EB-5 case receipts, EB-5 processing times have inexplicably and dramatically increased.

40. USCIS posted processing time for I-829 petitions has increased by over 200% from 2015 to the present.

41. Plaintiffs have followed all filing procedures and have submitted complete petitions.

42. On information and belief, Plaintiffs are, and have been since the time of filing, eligible to have their petitions approved.

43. On information and belief, other CMB Group 48 EB-5 investors have had their I-829 petitions adjudicated and approved in 2022.

## COUNT ONE
## WRIT OF MANDAMUS

44. Plaintiffs reiterate the allegations set forth in Paragraph 1-43 as if fully set forth herein.

45. A mandamus plaintiff must demonstrate that: (1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to perform the act in question; and (3) no other adequate remedy is available. *See Iddir v. INS*, 301 F.3d 492, 499 (7th Cir. 2002).

46. Plaintiffs have a clear right to the relief requested because USCIS has statutory deadlines to adjudicate their petitions within 90 days pursuant to 8 CFR § 216.6(c). Defendants failed to follow this regulatory requirement and delayed adjudication well beyond 90 days, in fact presently over three years.

47. In addition, by charging a filing fee, Defendant USCIS has created an obligation for itself to process and adjudicate the application. *See* 8 C.F.R. § 103.7(b)(1); *see also Kim v. USCIS*, 551 F. Supp. 2d 1258, 1262-63 (D. Colo. 2008) ("the imposition of a considerable mandatory adjudication fee implies that Congress intended that the Attorney General actually decide applications"). In exchange for the filing fee paid, USCIS processes and adjudicates Plaintiffs'

8

application. Upon information and belief, Plaintiffs have fully complied with the applicable statutory and regulatory requirements. USCIS has the ability to allocate sufficient resources to meet its one case processing goals in the time frame specified by Congress for the adjudication of immigrant benefits, but Defendants failed to do so.

48. USCIS has offered no adequate reason for the delay and has not indicated when a response can be expected which undermines Plaintiffs' confidence in Defendant agency's intent to adjudicate Plaintiffs' petitions within a reasonable time absent court intervention.

49. USCIS's failure to adjudicate EB-5 petitions within the time frame specified by Congress frustrates the goals of the program because the intent was to stimulate job creation in the U.S.

50. Plaintiffs have fully complied with all applicable laws, regulations and procedures, and have provided Defendants with all information and documents required or requested in conjunction with their application and petitions.

51. Plaintiffs have been greatly damaged by the failure of Defendants to act in accordance with their duties under the law and adjudicate their applications as follows:

   a. Investor Plaintiffs have been damaged in that their funds remain at risk, with no indication of whether they will be able to obtain the immigration benefit that motivated them to make the investment.
   b. Plaintiffs have been damaged in that they face ongoing uncertainty about the future, which hinders their ability to make a long-term investment in the U.S. and deprives them of the peace of mind of knowing where their future will be. Plaintiffs have been damaged in that this ongoing uncertainty about their future hinders their ability to make career, family, and life choices. This is exacerbated by the fact that Plaintiffs face repeated questions about their legal status from third parties and must constantly explain and prove their legal status in the U.S., causing stress and humiliation.
   c. Plaintiffs have been damaged in that they must now repeatedly go to a local USCIS field office to receive documentation as to the Plaintiff's status for travel, employment, identification, and other purposes in the form of an I-551 stamp yearly. To even obtain an appointment Plaintiff must go through the process of first creating an appointment and finding a time that works for Plaintiff, his spouse, older son, and younger son, who attends the University of Illinois at Urbana-Champaign, to travel to the Chicago District Office. This particularly puts

      a strain on Plaintiff Huseyin's ability to travel frequently to and from Turkey because his sister, who has a disability, remains back home in Turkey and he is the main caretaker of her.

   d. Plaintiffs are also unable to obtain approval of their naturalization forms because their I-829 petition has not been approved yet.

52. The harm suffered by Plaintiffs is ongoing, and can be resolved only through adjudication of their petitions.

53. Defendants have a duty to adjudicate Plaintiffs' petitions within a reasonable time, have failed to do so, so a Writ of Mandamus is proper where Plaintiffs have no adequate remedy, other than this complaint, to compel Defendants to perform their duty.

**COUNT TWO**
**VIOLATION OF THE APA**

54. Plaintiffs reiterate the allegations set forth in Paragraph 1-53 as if fully set forth herein.

55. Relief pursuant to the APA and 28 U.S.C. § 1331 is warranted where Plaintiffs show that Defendants have a non-discretionary duty to take a discrete agency action and have unreasonably delayed in acting on that duty. *See Norton v. S. Utah Wilderness Alliance,* 542 U.S. 55, 64 (2004); 5 U.S.C. § 555(b) ("[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."); 5 U.S.C. § 706(1) (courts shall "compel agency action unlawfully withheld or unreasonably delayed"). Plaintiffs reiterate that Defendants have a non-discretionary duty to adjudicate its petition.

56. Defendants' delay in adjudicating Plaintiffs' I-829 petition is unreasonable and is enough to warrant Court intervention, whether by supervision, order, or both. They have entirely failed to adjudicate within 180 days after initial filing which exceeds the expectations set out by Congress. They have failed to provide an explanation for their delay in adjudicating the petition.

57. Plaintiffs' interests have important welfare and economic dimensions. Defendants' failure

to adjudicate Plaintiffs' I-829 petition, and the delay in adjudication, has negatively impacted Plaintiffs' lives, well-being, and livelihoods. It has caused Plaintiff and his immediate family to limit their quality of life, business prospects, and life plans.

58. Defendants have failed to carry out their mandatory duty to adjudicate Plaintiff's I-829 petition without justification for over three years, therefore relief under the A.P.A. is warranted.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

1. Grant Plaintiffs a Writ of Mandamus and/or an order under the A.P.A. requiring Defendants to adjudicate the investor Plaintiffs' I-829 petition within 30 days;

2. Grant other such relief at law and equity as justice may require;

3. Grant an award of attorney's fees as maybe be appropriate; and

4. Retain jurisdiction over this matter to ensure Defendants' compliance with this Court's order.

Dated: February 20, 2023

Respectfully Submitted:

*/s/Sean M. Sharp*
Sean M Sharp (#6313964)
Atom Law Group
770 N. LaSalle, Suite 700
Chicago, IL 60654
(312) 943-8000
ssharp@atom.law
*Counsel for Plaintiffs*